# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF TEXAS

### TYLER DIVISION

| | | |
|---|---|---|
| **NEWTON  ANDERSON,** | § | |
| Petitioner, | § | |
| vs. | § | Civil Action No. 6:03cv171 |
| **DOUG DRETKE,  Director**,<br>Texas Department of Criminal Justice,<br>Correctional Institutions Division, | §<br><br>§ | |
| Respondent. | | |

### MEMORANDUM OPINION

Petitioner Newton Anderson ("Anderson"), an inmate confined to the Texas Department of Criminal Justice, Institutional Division, filed an application for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254.  Anderson challenged his capital murder conviction and death sentence imposed by the 114th Judicial District Court of Smith County, Texas in cause No.114-80325-99, styled *The State of Texas vs. Newton Anderson.*  Having considered the circumstances alleged and authorities cited by the  parties, and having reviewed the record, the Court finds that the application is not well-taken and it will be denied.

**Facts**

At approximately 2:30 p.m. on March 4, 1999, two witnesses saw a man walking along the highway near the house of Frank and Bertha Cobb in New Harmony, Texas.  Later that afternoon, a neighbor passed the Cobb's maroon Cadillac automobile on the highway.  When the neighbor arrived at her house, she saw that the Cobb's house was on fire.  A volunteer firefighter also passed the maroon Cadillac on his way to the Cobb house and later identified Anderson as the driver. Firefighters

1

discovered the Cobb's bodies in the house. Both victims' hands had been bound with electrical tape and both had been shot in the head; Ms. Cobb had been sexually assaulted. The State's DNA expert testified that Anderson's DNA matched the DNA of semen discovered in Ms. Cobb's body. Anderson's sister testified that during a telephone conversation on March 6, 1999, Anderson confessed to her that he killed the Cobbs. Michael Smith, Anderson's step-nephew, testified that on the day of the killings Anderson came to his residence, driving a maroon Cadillac, and asked him for help in unloading a great deal of property. Smith helped Anderson put the property in a trailer which Anderson shared with his sister and her husband. Police later recovered several items from the trailer which belonged to the Cobbs.

**Procedural history**

Anderson was indicted for capital murder, for killing two persons within the same criminal transaction. *See* TEX. PENAL CODE § 19.03 (a)(7)(A) (2003). He pleaded not guilty, stood trial and was convicted. On May 12, 2000, after a punishment determination proceeding, he was sentenced to death. On May 22, 2002, his conviction and sentence were affirmed. *Anderson v. State,* No. 73,829 (Tex. Crim. App. 2002) (unpublished opinion). Anderson did not seek a writ of *certiorari* from the Supreme Court of the United States; his petition for post-conviction relief was denied on March 26, 2003. *Ex parte Anderson*, No. 54,761-01 (Tex. Crim. App. 2003) (unpublished order). On April 18, 2004, he filed an application for a writ of *habeas corpus* with this Court.

**Claims presented**

Anderson raised eleven claims in his application:

1. His trial counsel rendered ineffective assistance by offering the testimony of an expert witness who conceded his (Newton's) future dangerousness.

2. The admission of unfairly prejudicial crime scene photographs denied him a fair trial.

2

3 and 4. Improper argument by the prosecutor denied him a fair trial.

5. The use of undefined and vague terms in the special sentencing issues denied him the due process of law.

6. The trial court's failure to inform the jury of the effect of a non-unanimous verdict as to any of the special sentencing issues denied him the due process of law.

7. Not requiring that the statutory aggravating factors be alleged in the indictment denied him the due process of law.

8. Requiring him to bear the burden of proof on the mitigation special sentencing issue denied him the due process of law.

9. Appellate counsel's failure to raise meritorious issues constituted ineffective assistance.

10. The state's unfettered discretion is deciding whether to seek the death penalty denied him due process of law.

11. The trial court's failure to grant a mistrial after it struck the testimony of the State's risk assessment expert denied him a fair trial.

12. The cumulative effect of the above eleven errors denied him the due process of law, even if no one error was sufficiently egregious, by itself, to do so.

**Standard of review**

28 U.S.C. § 2254 (d) provides that relief in *habeas corpus* may not be granted with respect to any claim which was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was either (1) contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (2) based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.  Pure questions of law and mixed questions of law and fact are reviewed under § 2254 (d)(1), while pure questions of fact are reviewed under § 2254(d)(2).  *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000), *cert. denied*, 532 U.S. 949 (2001).

If the state court refuses to reach the merits of a claim because of a violation of a state procedural

3

rule, the federal court will also refuse to address the merits of the claim unless the applicant can establish

either (a) that he had good cause for failing to exhaust his claim and he would be prejudiced if the federal

court did not consider the merits of his claim, or (b) failing to address the merits of his claim would result

in a fundamental miscarriage of justice, because he is actually innocent.  *See Coleman v. Thompson,* 501

U.S. 722, 749-750 (1991).

**Analysis**

Anderson's first claim is that his trial counsel rendered ineffective assistance by offering the

testimony of an expert witness who conceded his (Anderson's) future dangerousness.  This claim was

adjudicated on the merits by the state court, and it involves a mixed question of law and fact, so the

question for the Court is whether the state court's rejection of this claim was contrary to, or the result of

an unreasonable application of, clearly established federal law, as determined by the Supreme Court of

the United States.

To obtain relief on a claim of ineffective assistance of counsel, a petitioner must establish both

that (1) counsel's performance was deficient, and (2) had counsel performed adequately, there is a

reasonable probability that the result in his case would have been different.  *See Strickland v. Washington*,

466 U.S. 668, 691-94 (1984).

Under the Texas sentencing scheme, a defendant convicted of capital murder cannot be sentenced

to death unless the state establishes beyond a reasonable doubt that there is a probability that he will

commit acts of criminal violence which will constitute a continuing threat to society.  After Newton was

convicted of capital murder, the court conducted a sentencing determination hearing in which this issue

was tried.  Anderson's counsel presented the testimony of Dr. Walter Quijano, a psychologist who had

frequently testified on this issue while employed by the Texas Department of Criminal Justice.  Dr.

4

Quijano testified that although his testing confirmed that Anderson was indeed a dangerous individual, in his opinion the security in place at the Texas prison system would be able to prevent Anderson from committing acts of criminal violence while in prison, which would be Anderson's "society."

In analyzing ineffective assistance claims, the Court presumes that counsel's decisions are reasonable. *Strickland,* 466 U.S. at 699. To rebut that presumption, an applicant must show that there is no reasonable strategy that the complained of action could have furthered. In the present case, the state court found that calling Dr. Quijano was the result of "a reasonable trial strategy of accepting that mental health experts had said and would continue to say that [Anderson] was a future danger but that Dr. Quijano would show the jury that he could be safely controlled in prison." The record shows that the prosecution did attempt to use Dr. Quijano's opinion as to Anderson's general dangerousness to its advantage, but it also attempted to discredit his opinion as to the capacity of the Texas Department of Criminal Justice to prevent Anderson from committing dangerous acts.

Had the jury believed all of Dr. Quijano's testimony, it could have found that there was not a probability that Anderson would have committed acts of criminal violence which would constitute a continuing threat to society. Accordingly, the Court finds that the state court was not unreasonable in finding that offering his testimony was a reasonable trial strategy, and not deficient performance for purposes of the *Strickland* test. Because the state court's rejection of Anderson's first claim was not the result of an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States in *Strickland*, the Court will grant the Director's motion for summary judgment as to this claim.

Anderson's second claim is that the cumulative effect of showing several gruesome crime scene photographs of the Cobbs' bodies was so unfairly prejudicial that it denied him a fair trial. This claim

5

was adjudicated on the merits by the state court, and it involves a mixed question of law and fact, so the question for the Court is whether the state court's rejection of this claim was contrary to, or the result of an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

The erroneous admission of evidence is generally considered a trial error, rather than a structural error. *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991). To obtain relief on a trial error in *habeas corpus*, an applicant must show that the wrongly admitted evidence had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). In the present case, in light of the strength of the other evidence against Anderson - his confession to his sister, his semen being found in Mrs. Cobb's body, his having possession of the Cobb's automobile and other personal property, and his having been seen driving the vehicle away from the Cobb's house as it was burning - the Court finds that the admission of the photographs, assuming *arguendo* that they were improperly admitted, did not have a substantial and injurious effect or influence in determining the jury's verdict that he was guilty of capital murder. Because the state court's rejection of Anderson's second claim was not an unreasonable application of clearly established federal law, as determined by the Supreme Court in *Brecht*, the Court will grant the Director's motion for summary judgment as to this claim.

Anderson's third and fourth claims are that improper statements by the prosecutor in his closing argument denied him (Anderson) a fair trial. These claims were adjudicated on the merits by the state court, and involve mixed questions of law and fact, so the question for the Court is whether the state court's rejection of these claims was contrary to, or the result of an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Like the

erroneous admission of photographs, improper prosecutorial argument is generally considered a trial error, rather than a structural error. *See Tankleff v. Senkowski*, 135 F.3d 235, 251 (2d Cir. 1998). To obtain relief on a trial error in *habeas corpus*, an applicant must show that the wrongly admitted evidence had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993); *Tankleff*, 135 F.3d at 251.

Anderson's third claim concerns two statements made within the same argument. Anderson's defense was that although he did sexually assault Mrs. Cobb, someone else killed her and her husband. The prosecutor stated: "Who is this other person? Does anyone know? *We don't.* And the defense never once - " At that point, the defense objected on the grounds that the prosecutor was improperly talking about his own personal knowledge. The trial court sustained the objection and instructed the jury to disregard the remark. Shortly afterwards, the prosecutor stated: "But I'll tell you this: Don't think for a minute that the State of Texas believes that there is another person - " The defense again objected, and the trial court again sustained the objection and instructed the jury to disregard the statement.

These two comments constituted improper statements of personal opinion or belief. In light of the trial court's curative instruction, however, and in light of the evidence that Anderson confessed to his sister, coupled with the lack of any evidence that another person was involved, the Court finds that the prosecutor's improper vouching did not have a substantial and injurious effect or influence on the jury's determination of its verdict that Anderson was guilty of capital murder. The Court finds that state court's rejection of Anderson's third claim was not based upon an unreasonable application of clearly established federal law, as determined by the Supreme Court in *Brecht*.

Anderson's fourth claim concerns an attack on the character of his defense counsel and on his

7

right to remain silent.  The prosecutor stated: "[D]o you think in this case that the defense would have ever admitted that he was even in the house in the first place if . . . the Cobb's property had not been found in his trailer?  Do you think they would have come in and told you that?  Do you think the defense would have come in her and admitted that the defendant sexually assaulted Bertha Cobb if his semen had not been in her vaginal cavity?  There is no honor in what they did. They did it - " At this point the defense objected, and the Court again sustained the objection and instructed the jury to disregard the statements.

A prosecutor may not attack a defendant's choice to not testify, although he may point out that a defendant's testimony is not entitled to greater weight, simply because he waived his right to remain silent.  *United States v. Thompson*, 422 F.3d 1285, 1299 (11th Cir. 2005).   In the present case, however, the prosecutor's comment was a bizarre and manifestly improper accusation that the Defendant and his counsel would have chosen to exercise his right to remain silent if they could have, and only waived it because of the evidence presented by the prosecution.  Such a statement not only unfairly criticizes the defendant and his counsel, it disparages the right to remain silent itself.

As shameful as this comment was, the test for *habeas corpus* purposes is whether it had a substantial and injurious effect or influence on the jury's determination of its verdict that Anderson was guilty of capital murder.  Again, in light of the trial court's curative instruction and the strong evidence of Anderson's guilt, the Court finds that the Prosecutor's comment did not have a substantial and injurious effect or influence on the jury's determination of its verdict.  The state court's rejection of Anderson's fourth  claim was not based upon an unreasonable application of clearly established federal law, as determined by the Supreme Court in *Brecht.*  Because the Court finds that the state court's rejection of Anderson's third and fourth claims was reasonable, it will grant the Director's

motion for summary judgment as to both claims.

Anderson's fifth claim is that the use of undefined and vague terms in the special sentencing issues denied him the due process of law.  This claim was adjudicated on the merits by the state court, and it involves a pure question of law, so the question for the Court is whether the state court's rejection of this claim was contrary to, or the result of an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

As explained in the analysis of Anderson's first claim, in order to sentence Anderson to death the jury had to find, *inter alia*, that there was a probability that he would commit criminal acts of violence which would constitute a continuing threat to society.  *See* TEX. CODE CRIM. PROC. Art. 37.071 § 3(b)(1).  Anderson contends that the terms "probability," "criminal acts of violence," and "continuing threat to society," which were not defined for the jury, are so vague that they do not allow juries to make a rational distinction between those capital murderers who deserve the death penalty from those who do not.

Anderson is correct that the Supreme Court of the United States has held that "aggravating circumstances," which narrow the class of capital murderers eligible for execution, may not leave unlimited discretion to the jury.  *See Godfrey v. Georgia*, 446 U.S. 420, 427 (1980).  He fails to acknowledge, however, that the Supreme Court has twice discussed the Texas "future dangerousness" special issue in this context, and did not strike it down.  *See, e.g., Jurek v. Texas*, 428 U.S. 262, 279 (1976) (White, J., concurring); *Pulley v. Harris*, 465 U.S. 37, 50 n.10 (1984).  Although not definitive of the provision's constitutionality, these two opinions foreclose any finding that the state court's rejection of Anderson's fifth claim was either contrary to, or an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States.  The Court will grant the Director's motion for summary judgment as to Anderson's fifth claim.

Anderson's sixth claim is that the trial court's failure to inform the jury of the effect of a non-unanimous verdict as to any of the special sentencing issues denied him the due process of law.  This claim was adjudicated on the merits by the state court, and it involves a pure question of law, so the question for the Court is whether the state court's rejection of this claim was contrary to, or the result of an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Anderson relies on two precedents: *Mills v. Maryland*, 486 U.S. 367 (1988) and *McKoy v. North Carolina,* 494 U.S. 433 (1990).  In those cases, the Supreme Court struck down jury instructions which required that jurors unanimously agree as to the existence of a particular mitigating circumstance.  The Court was concerned about the possibility that all twelve jurors would agree that a defendant's life should be spared, but because they felt that way for slightly different reasons, their verdict as to any one reason would not be unanimous and the defendant's life would not be spared.

Anderson, however, does not contend that the jury in his case was misled into thinking that it had to agree unanimously as to the specific mitigating circumstance.  His complaint is that the jury in his case should have been informed that a less than unanimous vote on the first two special sentencing issues, for example, a vote of 11-1 that he would be dangerous in the future, would result in his receiving a life sentence.  The Court agrees with the United States Court of Appeals for the Fifth Circuit that  the situation the Supreme Court considered in *Mills* and *McKoy* is too dissimilar to the situation Anderson is complaining about to be comparable. *See e.g. Hughes v. Johnson,* 191 F.3d 607, 628-29 (5th Cir. 1999), *cert. denied*, 528 U.S. 1145 (2000).  The Court cannot find that the state court's rejection of Anderson's sixth claim was contrary to, or an unreasonable application of, the law established by the Supreme Court in those two precedents, so it will grant the Director's motion for summary judgment as to this claim.

Anderson's seventh claim is that not requiring that the statutory aggravating factors be alleged

10

in the indictment denied him the due process of law.  This claim was adjudicated on the merits by the state court, and it involves a pure question of law, so the question for the Court is whether the state court's rejection of this claim was contrary to, or the result of an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

In *Apprendi v. New Jersey*, 530 U.S. 466, 476 (2000), the Supreme Court of the United States held that any fact which increases the penalty for a crime beyond the prescribed statutory maximum must be alleged in the indictment.  Anderson contends because a conviction of capital murder in Texas results in a sentence of life imprisonment unless the State establishes the special sentencing issues, those issues "enhance" the punishment for capital murder from life imprisonment to death. Although this statement is correct, it does not mean that the penalty of death is not prescribed as the maximum punishment in the Texas statutory scheme.  TEX. PENAL CODE §19.03 states that  capital murder is a "capital felony."  TEX. CODE CRIM. PROC. Art. 37.071, titled "procedure in capital cases," provides that the state may choose to seek a sentence of death for any capital felony.  This statutory scheme establishes that the death penalty is within, not beyond, the prescribed statutory maximum punishment for capital murder in Texas.  The facts at issue in the Texas special sentencing issues, therefore, do not increase the penalty for capital murder in Texas beyond the maximum punishment provided by statute.  Because the state court's rejection of Anderson's seventh claim was not contrary to, or the result of an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States in *Apprendi*, the Court will grant the Director's motion for summary judgment as to this claim.

Anderson's eighth claim is that requiring him to bear the burden of proof on the mitigation special sentencing issue denied him the due process of law.  This claim was adjudicated on the merits

11

by the state court, and it involves a pure question of law, so the question for the Court is whether the state court's rejection of this claim was contrary to, or the result of an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

In *Ring v. Arizona,* 536 U.S. 584 (2002), the Supreme Court of the United States held that the aggravating factors in a capital murder sentencing trial must be determined by a jury and must be established by the prosecution beyond a reasonable doubt.   Under the law in effect at the time of Anderson's sentencing hearing, for Anderson to be sentenced to death the jury had to find: 1) that there was a probability that he would commit acts of criminal violence which would constitute a continuing threat to society, 2) that Anderson actually killed the victims, intended to kill the victims, or anticipated that  victims' lives would be taken, and 3) that there were no mitigating circumstances which would warrant imposing a sentence of life imprisonment, rather than death.  *See* TEX. CODE CRIM. PROC. § 37.071 (West 2004).  Anderson contends that his constitutional rights under the Sixth, Eighth and Fourteenth Amendments are violated because he had the burden of establishing the existence of mitigating circumstances, instead of the prosecution's having the burden to disprove the existence of mitigating circumstances beyond a reasonable doubt.

In *Apprendi*, the Supreme Court distinguished between facts in aggravation of punishment and facts in mitigation, *see* 530 U.S. at 490 n.16, and in *Ring*, the Supreme Court explicitly noted that the case did not present the issue of mitigating circumstances.  *See* 536 U.S. at 597 n.4.  That the Supreme Court has twice explicitly left open the question of whether facts in mitigation in a capital case need to be proved beyond a reasonable doubt shows that it has not clearly established the law as to this issue.  Because the Supreme Court has not yet clearly established the law as to this issue, the state court's rejection of Anderson's eighth claim cannot be either contrary to, or the result of an

12

unreasonable application of, clearly established federal law, as determined by the Supreme Court.  The Court will grant the Director's motion for summary judgment as to this claim.

Anderson's ninth claim is that his appellate counsel's failure to raise his second through seventh claims on direct appeal constituted ineffective assistance.  This claim was adjudicated on the merits by the state court, and it involves a mixed question of law and fact, so the question for the Court is whether the state court's rejection of this claim was contrary to, or the result of an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  The substantive legal standards for a claim of ineffective assistance of counsel on appeal are the same as the standards for trial counsel; a petitioner must establish both that (1) counsel's performance was deficient, and (2) had counsel performed adequately, there is a reasonable probability that the result in his case would have been different.  *Styron v. Johnson,* 262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002),  *citing  Strickland v. Washington*, 466 U.S. 668, 697 (1984).

In the present case, appellate counsel stated that he chose not to raise these issues before the Texas Court of Criminal Appeals because that court had consistently rejected them in the past, and he believed that raising them might irritate or distract the judges and thus make them less willing and/or able to seriously consider the three issues he did raise.  The state court found that this strategy was reasonable, and thus found that counsel had not rendered deficient performance.  Anderson contends, however, that his counsel should have considered that he was waiving the ability to have these issues considered by the Supreme Court of the United States on *certiorari* review, where they were more likely to prevail than either before the state court, or before this Court on *habeas corpus* review.

The Court agrees with Anderson, particularly considering that the state courts often rule - and the Director often argues before this court - that the failure to raise issues on direct appeal precludes their being considered in state and federal post-conviction proceedings.  Anderson's appellate counsel's failure

13

to weigh the possibilities of waiver and of facing more difficult standards of review was unreasonable, and this meets the first prong of the *Strickland* test.[1]  To meet the second prong of the *Strickland* test, however, Anderson must establish that there is a reasonable probability that, had his counsel raised those six issues on direct appeal, the Supreme Court of the United States would have granted relief on at least one of them.  Anderson provides neither evidence nor argument to support this proposition, so the Court will grant the Director's motion for summary judgment as to Anderson's ninth claim.

Anderson's tenth claim is that the unfettered discretion provided the State in deciding whether to seek the death penalty denies him (and all other capital murder defendants) due process of law and the equal protection of the laws, and constitutes cruel and unusual punishment.  This claim was adjudicated on the merits by the state court, and it involves a pure question of law, so the question for the Court is whether the state court's rejection of this claim was contrary to, or the result of an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Because Anderson cited no legal authority whatsoever to support his tenth claim, much less any clearly established federal law as determined by the Supreme Court,[2] the Court will grant the Director's motion for summary judgment as to this claim.

Anderson's eleventh claim is that the trial court's failure to grant a mistrial after it struck the testimony of the State's risk assessment expert denied him a fair trial.  This claim was presented to the state court on direct appeal, but the state court refused to adjudicate the merits of the claim because counsel did not preserve the error at trial. *See Anderson v. State*, No. 73,829, slip op. at 6.  Because the

---

[1]  To the extent that the state court's findings to the contrary ( see SHR pp. 192-193, Nos. 7, 9, and 13 ) may be considered findings of fact, the Court finds that they have been rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254 (e)(1).

[2]  Anderson argued that the lack of  standards resulted in different standards being used in different counties, which violated his right to the equal protection of the laws.  The Court notes that the Supreme Court accepted a somewhat similar argument in *Bush v. Gore*, 531 U.S. 98 (2000), but that Court stated in its opinion that the reasoning in the case could not be used in other cases.

14

state court refused to reach the merits of this claim due to Anderson's violating a state procedural rule, the Court will likewise  refuse to address the merits of the claim unless Anderson can establish either (a) that he had good cause for failing to exhaust his claim and he would be prejudiced if the federal court did not consider the merits of his claim, or (b) failing to address the merits of his claim would result in a fundamental miscarriage of justice, because he is actually innocent.

The Director raised this procedural default defense in his motion for summary judgment.  In response, Anderson did not allege that either the cause/prejudice or fundamental miscarriage of justice exceptions applied.  Accordingly, the Court will grant the Director's motion for summary judgment as to Anderson's eleventh claim.

Anderson's twelfth and final claim is that the cumulative effect of the above errors denied him the due process of law, even if no one error was sufficiently egregious, by itself, to do so.  This claim was adjudicated on the merits by the state court, and it involves a mixed question of law and fact, so the question for the Court is whether the state court's rejection of this claim was contrary to, or the result of an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  In *Kyles v. Whitney*, 514 U.S. 419, 436 (1995), the Supreme Court of the United States held that the cumulative effect of constitutional errors could be significant even though the effect of each individual error was not.  The test is whether the accumulated errors had a "substantial and injurious effect or influence in determining the jury's verdict."  *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

As explained above, in this case the Court found two and assumed a third error occurred at trial (the trial court's admission of more crime scene photographs than were necessary and two instances of improper prosecutorial argument.)  The Court also found an error by Anderson's counsel on appeal (failing to consider the consequences of not raising several non-frivolous claims on direct appeal,) but

because this error could not have affected the jury's determination of its verdict, this error will not be considered.  As previously noted, in light of the strong evidence of guilt in this case - the presence of Anderson's semen in the vaginal cavity of one of the victims, his possession of a large quantity of the victims' property, and his confession to his sister that he killed the victims - the Court finds that the three errors, in combination, did not have a substantial and injurious effect or influence in determining the jury's verdict.  The Court will grant the Director's motion for summary judgment as to Anderson's twelfth and final claim.

**Conclusion**

Because the Court finds that the Director is entitled to judgment on all twelve of Anderson's claims, it will grant his motion in its entirety.  A separate order and judgment will be entered.

**So ORDERED and SIGNED this 18th day of January, 2006.**

**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**